IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MOORE DEVELOPMENT, LTD.,

    Plaintiff,

vs.

M.G. MIDWEST, INC., d/b/a MOVIE GALLERY; a/k/a MOVIE GALLERY US, LLC; a/k/a MOVIE GALLERY US, INC.,

    Defendant.

No. C06-1014

RULING ON MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   LEGAL STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . 2

IV.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . 6
    A.   Breach of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.   Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.   Statute of Frauds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.   Oral Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    B.   Promissory Estoppel/Equitable Estoppel . . . . . . . . . . . . . . . . . . . 15
        1.   Promissory Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.   Equitable Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    C.   Intentional Interference with Prospective Business Relations . . . . . . 17

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

## I. INTRODUCTION

On the 19th day of July, 2007, this matter came on for telephonic hearing on the Motion for Summary Judgment (docket number 20) filed by Defendant M.G. Midwest, Inc., d/b/a Movie Gallery; a/k/a Movie Gallery US, LLC, a/k/a Movie Gallery US, Inc., on May 23, 2007. Plaintiff Moore Development, LTD. was represented by its attorney, Jeffrey L. Walters. Defendant was represented by its attorney, Vernon P. Squires.

## II. PROCEDURAL HISTORY

Plaintiff filed a Petition at Law in the Iowa District Court for Jackson County on April 28, 2006. In its Petition, Plaintiff claims breach of contract (Count I), misrepresentation (Count II), fraudulent misrepresentation (Count III), negligence (Count IV), promissory estoppel/equitable estoppel (Count V), and intentional interference with prospective business advantage (Count VI). On May 23, 2006, Defendant filed a Notice of Removal (docket number 1) requesting that this case be removed from the Iowa District Court for Jackson County to this Court based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441(a). On May 30, 2006, Defendant filed both a Motion to Dismiss Counts II, IV, and VI (docket number 4) and an Answer and Affirmative Defenses (docket number 5). On September 22, 2006 Magistrate Judge John A. Jarvey entered an Order (docket number 13) denying Defendant's motion to dismiss. Defendant filed an Amended Answer and Affirmative Defenses (docket number 14) on October 3, 2006. Defendant filed its instant summary judgment motion on May 23, 2007, asking the Court to summarily dismiss all of Plaintiff's claims. On June 27, 2007, Plaintiff filed a Resistance to Defendant's motion.[1] On July 5, 2007, Defendant filed a Reply.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[1] The Court notes parenthetically that Plaintiff's Resistance and Brief (docket number 25) fail to comply with Local Rule 10.1.b.1, which requires all documents filed with the Court to be double spaced.

2

law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when a 'reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel West Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. RELEVANT FACTS

Plaintiff Moore Development, LTD. is an Iowa corporation with its principal place of business located in Maquoketa, Iowa. Plaintiff is in the business of owning real estate and its holdings include Westgate Plaza, a commercial property located in Maquoketa.

3

Plaintiff is solely owned by Ken Moore ("Moore"), who is also a principal in several other real estate development and construction businesses in eastern Iowa. Defendant M.G. Midwest, Inc. is a Delaware limited liability company with its principal place of business located in Dothan, Alabama. Defendant operates video rental stores throughout the United States.

In 2004, Lori Moody ("Moody"), who at the time worked as a real estate manager for Defendant,[2] identified an undeveloped parcel of land in Maquoketa as a possible site for Defendant to open a video store. Moody contacted Alvin Barten ("Barten"), a Maquoketa realtor, and inquired about the property. Barten informed Moody that the property owner at that time was not interested in developing the property for Defendant.

Later, Plaintiff purchased the property which Moody had identified as a possible video store location for Defendant. Before securing any tenants, Plaintiff constructed a building on the property and named the project Westgate Plaza. Barten then initiated contact between Defendant and Plaintiff regarding space available for lease at Westgate Plaza.

On May 17, 2005, Moody contacted Plaintiff directly regarding Defendant leasing space in Westgate Plaza. On May 18, 2005, Moody emailed Plaintiff and Barten requesting information from them. Moody indicated that she would use the information to put together a package regarding the lease of space in Westgate Plaza for Defendant's approval. Attached to the email was a letter of intent and information regarding Defendant's build-out requirements for the space to be leased. The letter of intent suggested a lease term of five years and rent at $4,500 per month. The letter of intent also contained the following language:

---

[2] Moody was originally a named defendant in this lawsuit. On April 16, 2007, Plaintiff moved to dismiss Moody as a named party (docket number 15). On April 17, 2007, the Court granted Plaintiff's motion to dismiss Moody as a named party (docket number 16).

> Landlord and Tenant acknowledge that this Letter of Intent
> shall not constitute a binding contract. This Letter of Intent is
> to be used solely as the basis for preparation and negotiation
> of a definitive lease agreement. Landlord and Tenant further
> acknowledge and agree that if either party determines, for
> whatever reason, not to pursue the negotiation and execution
> of a definitive lease agreement, then neither party shall have
> any obligation to the other party under this Letter of Intent.

(Defendant's Appendix at 42.) Defendant's build-out requirements included specifications for indoor and outdoor lighting, plumbing, windows, doors, and electrical.

After May 18, 2005, Plaintiff began the build-out construction on the premises Defendant intended to lease. Plaintiff communicated with Defendant's "build-out people" during the build-out construction process regarding Defendant's window and lighting needs, the bathroom layout, and expansion of the parking lots.[3] In addition to the build-out construction, Plaintiff moved underground tanks from the north end of the building to the south end of the building because the space desired by Defendant had originally been planned as a restaurant, which required underground tanks.

On November 9, 2005, Moody emailed Barten and indicated that she was still working on getting an "OK" on the deal to lease the premises at Westgate Plaza.[4] On December 13, 2005, Moody emailed Barten and informed him that Defendant no longer planned to move forward with the Maquoketa store.[5] Other facts that are significant for

---

[3] *See* Defendant's Appendix at 6. (Moore's Deposition, pp. 20, l. 16 - 21, l. 21) Moore also testified in his deposition that: "[Defendant] started giving us direction and telling us what to do with the build-out . . . we were working with their build-out people." Defendant's Appendix at 10. (Moore's Deposition, p. 34, l. 10-21)

[4] *See* Plaintiff's Appendix at 45.

[5] Moody's December 13, 2005 email to Barten stated:
> I am so sorry things worked out as they did. I guess it just
> wasn't menat [sic] to be. If they had moved quickly it would
> have been a done deal. We are not looking at any new
> development at this time. We just took on 2000 Hollywood

(continued...)

making the determinations on the motion for summary judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Resistance, Plaintiff withdraws its negligent misrepresentation claim (Count II), fraudulent misrepresentation claim (Count III), and negligence claim (Count IV). Therefore, the Court need not consider those claims. The Court will consider Plaintiff's remaining claims in the order set forth in the Petition.

### A. Breach of Contract

In Count I of its Petition, Plaintiff claims breach of contract. Specifically, Plaintiff alleges that it reached an agreement with Defendant with regard to the terms of a lease agreement, including modifications of the rental space to meet Defendant's build-out requirements. Plaintiff asserts that it made substantial modifications to the leased premises in reliance on the agreement with Defendant. According to Plaintiff, Defendant breached the agreement by deciding not to accept the rental space and perform under the lease. Defendant argues that it is entitled to summary judgment on Count I because the statute of frauds bars evidence of the purported oral lease agreement. In the alternative, Defendant argues that even if the statute of frauds is not applicable, summary judgment is appropriate because Plaintiff cannot prove the existence of an oral agreement between Plaintiff and Defendant.

### 1. Agency

Defendant first argues that it is entitled to summary judgment on all of Plaintiff's claims under an agency law theory. Specifically, Defendant argues that Plaintiff's claims are all based on Moody's conduct, but Moody was not its agent, and therefore, her conduct

---

[5](...continued)
> Video Stores; the movie industry is not doing so hot so that rolls down to us. I think we are at least a year from looking at anything.

(Plaintiff's Appendix at 44)

could not bind it to Plaintiff. Plaintiff argues that Moody represented herself as Defendant's agent and represented that she had the authority to enter into binding contracts on Defendant's behalf.

Under agency law, whatever an agent does under his or her actual authority binds the agent's principal. *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000) (citation omitted). Actual authority is "authority to act . . . when a principal intentionally confers authority on the agent either by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he [or she] has the power to act." *Dillon v. City of Davenport*, 366 N.W.2d 918, 924 (Iowa 1985) (citations omitted).

Defendant argues that it is undisputed that Moody lacked actual authority to bind Defendant in a contract.[6] Defendant further argues that the record also shows that Moody did not have apparent authority because Plaintiff cannot identify any act by Defendant conferring apparent authority on Moody. *See Waukon Auto Supply*, 440 N.W.2d at 847.

Plaintiff, however, maintains that Moody represented that she had authority to act on behalf of Defendant.[7] Plaintiff points out that Moody held the title of real estate

---

[6] In Moody's affidavit, she states:
> "When I spoke with Ken Moore and Alvin Barten about [Defendant's] interest, I explained that [Defendant] required corporate approval before any deal could be finalized. I did not tell either of them that I had authority to conclude the deal on my own."

Defendant's Appendix at 28. (Moody's Affidavit, p. 2, ¶ 4)

[7] Moore's deposition testimony provides:
> I'd never met [Moody]. [Moody] said that she wanted the space [in Westgate Plaza]. She said she had the authority to do the deal. And I was to take it off the market. Those were her exact words. She said I want you to take it off the market, it [is] a done deal, we're going to take the space.

(continued...)

manager for Defendant, actively sought out its rental space in Westgate Plaza, directed it to take the space off the market, and provided it contact information for Defendant's construction manager in Iowa to discuss any questions it might have regarding Defendant's build-out requirements. Additionally, Plaintiff notes that the contact information provided by Moody was on Defendant's letterhead and was delivered via an email address attributed to Defendant. Plaintiff asserts that the foregoing evidence shows that Moody had apparent authority to act on behalf of Defendant.

"Apparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing." *Hendricks*, 609 N.W.2d at 493 (citing *Magnusson Agency v. Public Entity National Company-Midwest*, 560 N.W.2d 20, 25-26 (Iowa 1997)). Apparent authority is not determined by the acts of the agent, but rather by what the principal does. *Id.* In order to show apparent authority, "'the principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority.'" *Waukon Auto Supply v. Farmers & Merchants Savings Bank*, 440 N.W.2d 844, 847 (Iowa 1989) (quoting *Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 711 (Iowa 1985)). "The burden of showing that an agent acted within the scope of the agency's actual or apparent authority is on the party claiming that such authority existed." *Hendricks*, 609 N.W.2d at 493 (citation omitted).

Generally, determination of whether a principal-agent relationship exists is a fact question. *Waukon Auto Supply*, 440 N.W.2d at 847 (citing *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 334, 5 N.W.2d 646, 651 (1942)). The record contains two conflicting sets of facts. In an affidavit, Moody states that she informed Plaintiff that she did not have authority to "conclude a deal" on behalf of Defendant for the leasing of space in Westgate Plaza. On the other hand, Moore, in his deposition, testifies that Moody

---

[7](...continued)
Plaintiff's Appendix at 5. (Moore's Deposition, p. 19, 1. 18-23)

informed him that she did have the authority to "deal" on behalf of Defendant. The record also demonstrates that Moody was a real estate manager for Defendant, corresponded with Plaintiff on behalf of Defendant, and provided information to Plaintiff using Defendant's letterhead and email address. The Court, having viewed the record in the light most favorable to Plaintiff, finds that Plaintiff has presented evidence that establishes a genuine issue of material fact as to whether Moody had apparent authority to act on behalf of Defendant. Therefore, when viewing Defendant's motion for summary judgment, the Court will attribute Moody's actions to Defendant.

### 2. *Statute of Frauds*

Defendant asserts that the statute of frauds is applicable in this case because the lease agreement alleged by Plaintiff was not reduced to writing and was for a length of five years. *See* Iowa Code section 622.32(3) (2007). Plaintiff argues that it satisfies the statute of frauds because Moody, as Defendant's agent, provided it with a letter of intent specifying all of the material terms of the lease agreement. Plaintiff points out that the letter of intent also included attachments which outlined each party's duties relating to the build-out requirements for the leased space. Plaintiff maintains that these written documents, combined with oral promises from Moody and other communications between Plaintiff's and Defendant's construction departments, satisfy the statute of frauds.

Iowa's statute of frauds applicable to interests in real estate is set forth in Code section 622.32(3). That section provides:

> Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent: . . . (3) Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year.

*Id.* Iowa's "statute of frauds does not render oral promises to convey invalid. Rather the statute relates merely to the manner of proof. The statute renders incompetent oral proof of such promises. The statute, therefore, is a rule of evidence and not of substantive law."

9

*Sun Valley Iowa Lake Association v. Anderson*, 551 N.W.2d 621, 630 (Iowa 1996) (citation omitted). Furthermore,

> [t]he statute of frauds exists for the prevention of fraud and perjury; and the means that it adopts is to refuse enforcement unless the contract is evidenced by a signed document. When a plaintiff is asking enforcement without having such a document, there is always the possibility that he [or she] is attempting to effectuate the very kind of fraud that the statute was passed to frustrate. Therefore, before decreeing enforcement, in disregard of the statutory prohibition, the court must be thoroughly convinced that the oral contract was in fact made as alleged.

*Peterson v. Petersen*, 355 N.W.2d 26, 28 (Iowa 1984) (citations omitted).

However, Iowa Code section 622.33 provides exceptions to the statute of frauds. Code section 622.33 provides in pertinent part:

> The provisions of subsection 3 of section 622.32 do not apply . . . when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds.

*Id.* The Iowa Supreme Court has interpreted the cited language in section 622.33 to mean that "the doctrine of promissory estoppel is available to remove an oral real estate contract from the statute of frauds." *Kolkman v. Roth*, 656 N.W.2d 148, 152 (Iowa 2003); *see also Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 407 (Iowa 1997) (recognizing that an oral real estate contract may be removed from the statute of frauds by the doctrine of promissory estoppel); *Meylor v. Brown*, 281 N.W.2d 632, 635 (Iowa 1979) (same); *Warder & Lee Elevator, Inc. v. Britten*, 274 N.W.2d 339, 342 (Iowa 1979) (same); *Miller v. Lawlor*, 66 N.W.2d 267, 271-73 (Iowa 1954) (same). "The doctrine of promissory estoppel does not eviscerate the statute of frauds, but only applies to circumvent the statute when necessary to prevent an injustice." *Kolkman*, 656 N.W.2d at 156.

Plaintiff sets forth a claim for promissory estoppel in Count V of its Petition. The Court will now address Plaintiff's promissory estoppel claim for the purpose of

determining whether promissory estoppel applies as an exception to the statute of frauds. In its promissory estoppel claim, Plaintiff alleges Defendant promised to lease the premises in Westgate Plaza. Plaintiff asserts that it relied to its detriment on Defendant's promise by complying with Defendant's build-out requirements for the space to be leased.

Defendant argues that the doctrine of promissory estoppel is not applicable in this case. Specifically, Defendant argues that it and Moody did not a make a clear and definite promise to lease the space in Westgate Plaza. Defendant asserts that both parties were clear that no binding agreement would exist between itself and Plaintiff until both parties executed a lease agreement.

The elements of promissory estoppel are:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he [or she] would not act; (3) the promisee acted to his [or her] detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 49 (Iowa 1999). Plaintiff asserts that Defendant, through its agent, Moody, made a clear and definite promise to lease the premises at Westgate Plaza. In his deposition, Ken Moore stated that Moody told him the lease at $13.50 per square foot was a "done deal" and to take the rental space off the market.[8] Following its discussions with Moody, Plaintiff received a detailed letter of intent which outlined the parameters of the lease. The letter of intent included an attachment which outlined Defendant's build-out requirements for the rental space. Plaintiff entered into communications with Defendant's construction department regarding Defendant's specific build-out requirements. Plaintiff argues that it acted to its detriment and reasonably relied on Defendant and Moody's promises when it complied with Defendant's build-out requirements and moved underground tanks, installed special

---

[8] *See* Plaintiff's Appendix at 5. (Moore's Deposition at pp. 19-21)

windows, lighting, plumbing, equipment, and made other modifications to the space for Defendant.

Defendant argues that it did not make a clear and definite promise to enter into a lease with Plaintiff for the space in Westgate Plaza. Specifically, Moody, in her affidavit, states that she informed both Moore and Barten that she did not have the authority to finalize a "deal" and needed Defendant's corporate approval before finalizing a lease agreement.[9] Defendant also asserts that both parties knew that a lease needed to be executed before either party had a binding obligation to the other.[10] Furthermore, in the May 18, 2005 email to Moore and Barten, containing the letter of intent and attachments, Moody informed them: "I will start putting the package together . . . I would like to get this in the June 17th meeting *for approval* . . . This is a busy time for everyone I know, *but lets get this deal done, behind us*, and open!"[11] (Emphasis added.) Moody also emailed Barten on November 9, 2005, and informed him that she would "call some folks and see if [she could] get an OK on [the] deal."[12] Defendant also claims that the purpose of the attachment to the letter of intent containing its build-out requirements and providing Plaintiff with contact information to its construction department was to inform Plaintiff of

---

[9] *See* footnote 4. (Moody's affidavit, p. 2, ¶ 4)

[10] ¶ 4 of the letter of intent provides:
> Tenant's lease form and exhibits (copy attached) will be the negotiated lease document (the "Lease"). Tenant will send to Landlord a final Lease after all lease terms are fully negotiated. Landlord will execute the Lease, have it properly witnessed, and return the lease to the Tenant.

Defendant's Appendix at 33.

[11] *See* Defendant's Appendix at 30. (Email from Moody to Moore and Barten, dated May 18, 2005)

[12] *See* Plaintiff's Appendix at 45. (Email from Moody to Barten, dated November 9, 2005)

the general cost and time necessary to complete the build-out, in order to establish the required rental amount, not to induce Plaintiff to begin the build-out project.

The burden of proving promissory estoppel is on the party asserting estoppel and it requires strict proof of all of the elements. *National Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989) (citation omitted). The first element of promissory estoppel requires a "clear and definite promise." *Schoff*, 604 N.W.2d at 49. "A promise is 'clear' when it is easily understood and is not ambiguous. A promise is 'definite' when the assertion is explicit and without any doubt or tentativeness." *Id.* at 51 (citations omitted). Moore's claim that Moody told him the lease agreement was a "done deal" is not a clear and definite promise. A lease agreement was never executed between the parties. Plaintiff points out that the letter of intent provided definite terms for the lease agreement, including the term of the lease, the rental cost for the premises, and detailed build-out requirements. However, the letter of intent also contained language which required a lease agreement to be executed before either party owed a binding obligation to the other.[13] The letter of intent also contained the following language:

> Landlord and Tenant acknowledge that this Letter of Intent shall not constitute a binding contract. This Letter of Intent is to be used solely as the basis for preparation and negotiation of a definitive lease agreement. Landlord and Tenant further acknowledge and agree that if either party determines, for whatever reason, not to pursue the negotiation and execution of a definitive lease agreement, then neither party shall have any obligation to the other party under this Letter of Intent.

(Defendant's Appendix at 42.) The letter of intent is clear that it is not a contract and that any lease agreement between Plaintiff and Defendant must be reduced to writing. Therefore, the letter of intent does not support Plaintiff's claim that Moody made a clear and definite promise that the lease agreement was a "done deal."

---

[13] *See* footnote 9. (Letter of Intent, ¶ 4)

After reviewing the record in the light most favorable to Plaintiff, and assuming that Moody promised the lease agreement was a "done deal," the Court nonetheless finds there is insufficient evidence of a clear and definite promise. Accordingly, the Court determines that Plaintiff cannot meet the first element of promissory estoppel. Therefore, Plaintiff cannot rely on promissory estoppel as an exception to the statute of frauds. *See Kolkman*, 656 N.W.2d at 152. Furthermore, because the alleged lease agreement between Plaintiff and Defendant was not reduced to writing and is for a term exceeding one year, the statute of frauds applies to Plaintiff's breach of contract claim. *See* Code section 622.32(3).

### 3. *Oral Contract*

In the alternative, Defendant argues that Plaintiff's breach of oral contract claim fails because Plaintiff cannot establish an enforceable oral contract. In order to prove an oral contract, Plaintiff must show that the terms of the alleged oral contract are "sufficiently definite for a court to determine with certainty the duty of each party and the conditions relative to performance." *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999) (citing *Burke v. Hawkeye National Life Ins. Co.*, 474 N.W.2d 110, 113 (Iowa 1991)). Plaintiff asserts that it can establish an oral contract with Defendant. Plaintiff contends that Moody's promise that the lease was a "done deal," combined with the definite terms regarding the lease outlined in the letter of intent, prove the existence of an oral contract between Plaintiff and Defendant.

However, determining the enforceability of an alleged oral contract may depend upon whether the parties intended to reduce the contract to writing. "'When the terms of an agreement are definitely fixed so that nothing remains except to reduce them to writing, an oral contract will be upheld unless the parties intended not to be bound until the agreement was reduced to writing.'" *Bradley v. West Sioux Community School Bd. of Education*, 510 N.W.2d 881, 884 (Iowa 1994) (quoting *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977)).

The letter of intent states:

> Tenant's lease form and exhibits (copy attached) will be the negotiated lease document (the "Lease"). Tenant will send to Landlord a final Lease after all lease terms are fully negotiated. Landlord will execute the Lease, have it properly witnessed, and return the lease to the Tenant.[14]

The letter of intent clearly requires Plaintiff and Defendant to reduce any lease agreement to writing. Plaintiff and Defendant did not reduce the lease agreement to writing. Because Plaintiff relies on the letter of intent to establish the definite terms of the lease and the letter of intent requires the lease to be reduced to writing and the parties did not comply with this requirement, the Court finds that Plaintiff cannot establish an enforceable oral contract. Therefore, the Court determines that Defendant is entitled to summary judgment on Count I of Plaintiff's Petition.

### B. Promissory Estoppel/Equitable Estoppel

#### 1. Promissory Estoppel

The elements of promissory estoppel are:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he [or she] would not act; (3) the promisee acted to his [or her] detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff*, 604 N.W.2d at 49. In section *V.A.2* of this decision, the Court concluded, having viewed the record in the light most favorable to Plaintiff, that Plaintiff could not meet the first element of promissory estoppel. Therefore, the court determines that Defendant is entitled to summary judgment on Count V of Plaintiff's Petition, as to promissory estoppel.

---

[14] *See* Defendant's Appendix at 33. (Letter of Intent, ¶ 4)

## 2. Equitable Estoppel

In Count V of its Petition, Plaintiff also claims equitable estoppel. In its equitable estoppel claim, Plaintiff alleges that Defendant promised Plaintiff it would lease the subject property, Plaintiff relied on Defendant's promises, and as a result of Defendant's conduct, Plaintiff has sustained damages. Defendant argues that equitable estoppel is not applicable in this case because Plaintiff cannot prove the elements necessary for such a claim.

The doctrine of equitable estoppel prevents a party that makes certain representations from taking "unfair advantage of another when the party making the representations changes its position to the prejudice of the party who relied upon the representations." *ABC Disposal Systems, Inc. v. Dep't. of Natural Resources*, 681 N.W.2d 596, 606 (Iowa 2004) (citing *Ahrendsen v. Iowa Dep't. of Human Services*, 613 N.W.2d 674, 678 (Iowa 2000)). The party asserting equitable estoppel has the burden of proving by clear and convincing evidence, the following elements:

> (1) a false representation or concealment of material facts;
> (2) lack of knowledge of the true facts on the part of the actor;
> (3) the intention that it be acted upon; and (4) reliance thereon
> by the party to whom made, to his [or her] prejudice and
> injury.

*Markey v. Carney*, 705 N.W.2d 13, 21 (Iowa 2005) (citations omitted). Plaintiff argues that Moody made a false representation on behalf of Defendant when she told it that the lease agreement between the two parties was a "done deal." Plaintiff further argues that it acted upon Moody's false representation by complying with Defendant's build-out requirements provided with the letter of intent.

Defendant denies that it or Moody made any false representations to Plaintiff. In her affidavit, Moody states that she informed both Moore and Barten that she did not have the authority to finalize a "deal" or lease agreement. She further stated that she needed Defendant's corporate approval before finalizing a lease agreement. Defendant also asserts that both parties knew that a lease needed to be executed before either party had a binding obligation to the other, as evidenced by the letter of intent which contained language

requiring a lease agreement to be executed in writing for a binding agreement to be created. The letter of intent also expressly stated that it was not a contract. Based on the foregoing evidence, the Court finds that Plaintiff cannot prove by clear and convincing evidence that Defendant or Moody made false representations that a lease agreement was a "done deal." Accordingly, the Court determines that Plaintiff's equitable estoppel claim fails; and therefore, Defendant is entitled to summary judgment on Count V of Plaintiff's Petition.

### C. *Intentional Interference with Prospective Business Relations*

In Count VI of its Petition, Plaintiff claims intentional interference with prospective business relations/advantage. In this claim, Plaintiff alleges that: (1) it had prospective landlord/tenant relationships for the property in Westgate Plaza, (2) Defendant had knowledge of the prospective landlord/tenant relationships, (3) Defendant intentionally and improperly interfered with the prospective landlord/tenant relationships by agreeing to lease the property in Westgate Plaza, (4) Defendant's interference caused it not to pursue other tenants, and (5) it incurred losses when Defendant refused to honor the lease agreement. Defendant argues that it is entitled to summary judgment on Count VI because it did not act with a predominantly improper purpose to financially injure or destroy Plaintiff as required for a intentional interference with prospective business relations claim.

In order to prove intentional interference with prospective business relations/advantage, Plaintiff must prove: (1) It had a prospective business relationship with a third party; (2) Defendant knew of the prospective relationship; (3) Defendant intentionally and improperly interfered with the relationship; (4) the interference caused Plaintiff not to enter into the relationship; and (5) the amount of damages. *Nesler v. Fisher and Co., Inc.*, 452 N.W.2d 191, 198-99 (Iowa 1990). In a claim for intentional interference with prospective business relations, "'the purpose on the defendant's part to financially injure or destroy the plaintiff is essential.'" *Id.* at 199 (quoting *Page County Appliance Center v. Honeywell*, 347 N.W.2d 171, 177 (Iowa 1984)); *see also Hoefer v. Wisconsin Education Association Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991)

17

("[P]laintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof 'that the defendant acted with a predominantly improper purpose.' *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984).").

Plaintiff offers no evidence that Defendant's purpose in dealing with it was to financially injure or destroy it. Furthermore, Moore states in his deposition that neither Defendant, nor Moody purposely tried to financially injure or destroy Plaintiff. Moore's deposition testimony provides:

> Q: Now, do you have any facts to suggest to you that [Defendant] wanted to financially injure [Plaintiff]?
> A: Well, [Defendant] and [Plaintiff] have no business connection. I don't think that there would be any reason for them to intentionally come out to Iowa and pick me out and say we want to injure that guy. . . .
>
> . . .
>
> Q: Do you think that [Moody] either individually or as a representative of [Defendant] wanted to financially injure your company?
> A: I don't know. I don't know . . . so I guess my answer would be did she come to Iowa . . . specifically herself, as a person, picked to injure us intentionally? I don't know. Unintentionally? She did. Whether it was intentional or not, I can't believe it would be, but I guess I don't know that.
> Q: That's fair. And I guess in lawsuits we need to use facts to prove legal theories, and do you have any facts that would suggest that she wanted to financially injure-
> A: I don't have any facts.

(Defendant's Appendix at 13, Moore's Deposition, pp. 46, l. 3 - 47, l. 9.) Furthermore, Plaintiff is unable to identify a prospective business relationship with a third party. Plaintiff simply states that it had "several inquiries from restaurants in the Cedar Rapids,

Iowa, area for rental of said space."[15] The Court finds that Plaintiff has failed to meet its burden to show that it had a prospective business relationship with a third party or that Defendant's purpose was to financially injure or destroy Plaintiff. Therefore, the Court determines that Defendant is entitled to summary judgment on Count VI of Plaintiff's Petition.

## VI. CONCLUSION

For the reasons set forth above, the Court concludes that Defendant is entitled to Summary Judgment on Counts I-VI. Accordingly, Plaintiff's Petition must be dismissed.

## ORDER

**IT IS THEREFORE ORDERED** as follows:

1. The Motion for Summary Judgment (docket number 20) filed by Defendant is **GRANTED**.

2. Plaintiff's Petition (docket number 1-2) is hereby **DISMISSED**.

DATED this 13th day of August, 2007.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA

---

[15] *See* Plaintiff's Brief at 12. Moore also provided the following deposition testimony:
   Q: Did you have an actual restaurant in mind?
   A: Well, we talked to a couple out of Cedar Rapids . . .

Plaintiff's Appendix at 4. (Moore's Deposition, p. 15, l. 4-6)